**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ASHLEY BOTELLO, individually, and on behalf of other similarly situated consumers,

       *Plaintiff*,

    v.

NAVIENT SOLUTIONS, LLC,

       *Defendant*.

Civil Action No. 22-5601

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

      In this putative class action, Plaintiff alleges that Defendant Navient Solutions, LLC ("Navient") is improperly allocating student loan repayments to lower, rather than higher, interest accounts to increase its profits. Currently pending before the Court is Navient's motion to compel arbitration, dismiss the case, and strike class allegations. D.E. 13. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Navient's motion is **DENIED.**

## I.    BACKGROUND

      Defendant has serviced Plaintiff's loans from at least 2006. Compl. ¶ 6.[2] Plaintiff obtained her first student loan through a promissory note she executed in 2005 (the "First Promissory Note"). *See* Iorio Decl., Ex. A. Plaintiff obtained her second student loan with a promissory note

---

[1] Defendant's brief in support of its motion (D.E. 15) is referred to as "Def. Br."; Plaintiff's opposition (D.E. 21) as "Plf. Opp."; and Defendant's reply (D.E. 25) as "Def. Reply".

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1-1, and the Declaration of Michelle Iorio ("Iorio Decl.") and its supporting exhibits, D.E. 14.

she executed in 2006 (the "Second Promissory Note").  *See id.*, Ex. C.  The Second Promissory Note contains an arbitration provision.  Through this arbitration agreement, either party can require the other party to arbitrate claims that "arise from or relates in any way to the [Second Promissory] Note."  *Id.* at § Q.3.  The arbitration provision also includes a class action waiver prohibiting either party from participating in a class action or class arbitration to resolve a claim.  *Id.* § Q.2.[3]  Non-party Navient Credit Finance Corporation is the current owner of both loans and contracted with Defendant to service the loans.  Iorio Decl. ¶¶ 9-10, 14, 19-20, 24.  As the loan servicer, Defendant sent Plaintiff monthly account statements that reflected the individual balance of both loans, in addition to the outstanding total for both.  *Id.* ¶ 40.

Plaintiff alleges that Defendant advised her that she could completely pay off her higher interest rate loan.  In response, Plaintiff made an April 2017 payment to Navient for the outstanding amount of the higher interest rate loan, the first loan.  Compl. ¶¶ 9-10.  Navient, however, applied "the payment to different accounts with lower interest rates" and continues to report an incorrect balance on the higher interest rate loan.  *Id.* ¶¶ 11, 14-15.  Plaintiff further alleges that Navient failed to conduct a reasonable investigation and correct the error after Plaintiff disputed the erroneous balance with credit reporting agencies.  *Id.* ¶¶ 15, 17-19.  In short, it appears that Plaintiff attempted to fully pay off her first loan, but Navient applied the payment to both loans "consistent with the policy outlined in the Account Statement."  Iorio Decl. ¶ 45.

Plaintiff filed her Complaint in New Jersey Superior Court, which Defendant removed to this Court on September 6, 2022.  D.E. 1.  Plaintiff asserts the following claims: (1) violation of

---

[3] The arbitration provision also covers several other areas, including the right to reject, a warning as to important waivers, definitions, the process to start an arbitration, the location and costs of the arbitration, discovery, effect of an arbitration award, and governing law.  Iorio Decl., Ex. C at § Q.

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1691a, *et seq*.; (2) breach of fiduciary duty; (3) the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, *et seq*.; (4) breach of contract; (4) unjust enrichment; and (5) common law fraud.  Plaintiff also seeks to assert the claims on behalf of a class of similarly situated consumers.  Compl. ¶ 20.  Navient responded with the instant motion, seeking to compel arbitration and dismiss Plaintiff's class action claims pursuant to the arbitration provision in the Second Promissory Note.  D.E. 13.  Navient also seeks to dismiss or stay this matter.  *Id.*

## II.    LEGAL STANDARD

"Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration.  *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)).  The Rule 12(b)(6) standard, however, is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]"  *Id.* at 774 (internal quotations and citations omitted).  Here, Defendant maintains that Plaintiff must arbitrate her claims because of an arbitration provision in a promissory note. Def. Br. at 2-3.  But Plaintiff does not rely on or reference any loan documents her Complaint. And the Complaint does not reference any arbitration agreement.  Accordingly, Defendant's arbitration defense is not clear from the face of the Complaint, and the Court must go beyond the face of the pleading to address Defendant's arguments.

The Court, therefore, must use the Federal Rule of Civil Procedure 56 standard to "ensur[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Guidotti*, 716 F.3d at 773-74 (internal quotation omitted).  The *Guidotti* court explained that

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776; *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 317 (3d Cir. 2022) (explaining that after the plaintiffs "brought forth sufficient facts to place the arbitration agreements in question," they should have been allowed limited discovery on the issue of arbitrability before the defendant had an opportunity to file a renewed motion to compel arbitration).

Here, however, neither party contends that discovery is necessary.  Moreover, the sole dispute, whether Plaintiff's claims are subject to the arbitration provision, is an issue of law.  As a result, the Court will decide Defendant's motion under the Rule 56 standard without providing the parties leave for limited discovery.  *See, e.g.*, *Kamineni v. Tesla, Inc.*, No. 19-14288, 2020 WL 57867, at *2 (D.N.J. Jan. 6, 2020) (adjudicating motion to compel arbitration that addressed "a pure issue of law" involving an agreement not referenced in the pleading under the Rule 56 standard without limited discovery).

Under Rule 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.  *Id*.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250-51.

### III.    ANALYSIS

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq.*). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). Here, Navient maintains that Utah law governs whether the parties entered into an enforceable agreement to arbitrate. Without providing a substantive choice of law analysis, Navient relies on a choice of law provision in the Second Promissory Note. Def. Br. at 14; *see also* Iorio Decl., Ex. C at § M.3.[4] Plaintiff does not appear to dispute Navient's position that Utah law applies. Seeing no clear reason to deviate from the

---

[4] The provision provides that "the provisions of this Noted will be governed by federal laws and the laws of the States" in which the lender is located as indicated in the introductory paragraph of the note. *Id.* at § M.3. The introductory paragraph, in turn, lists the lender as "Sallie Mae Bank Murray, Utah[.]" *Id.* at Intro. Par. The arbitration provision, however, indicates that the governing law is the "FAA[,]" including the "the substantive law to the extent consistent with the FAA[.]" *Id.* at at § Q.8. Neither party addresses the effect, if any, of this seemingly contradictory language.

parties, the Court applies Utah law to determine whether Plaintiff's claims fall within the scope of the arbitration provision in the Second Promissory Note. *See Cole v. NIBCO, Inc.*, No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015) (explaining that because "Defendant suggests, and Plaintiffs do not dispute" which state law applies, "the Court will follow the lead of the parties and will not engage in a choice of law analysis"); *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).    Plaintiff also does not appear to dispute that Second Promissory Note contains an enforceable arbitration provision.  As a result, the Court only briefly addresses this issue.

To interpret a contract under Utah law, a court looks first to the document itself.  "When a contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Reed v. Davis Cnty. Sch. Dist.*, 892 P.2d 1063, 1064-65 (Utah Ct. App. 1995).  Utah policy also favors the interpretation contracts in support of arbitration.  A court, however, "must first conclude that arbitration is a remedy which has been bargained for by the parties." *Id.* at 1065; *see also Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 604 (Utah 2002) (explaining that a court "must initially determine whether the parties bargained for arbitration as a method of resolving their disagreements").

Plaintiff executed the Second Promissory Note in 2006.  Iorio Decl., Ex. C at 1.  The Second Promissory Note provides that either party may require the other party to arbitrate its claims. *Id.* at § Q.3.  The arbitration provision further explains how to commence arbitration, the location and costs of an arbitration, arbitration discovery, the effect of an arbitration award and the

governing law.[5]  *Id.* at § Q.4 - .8.  Consequently, the parties' intent to arbitrate is clear from the text of the Second Promissory Note.  Moreover, Plaintiff does not dispute that Defendant, as the loan servicer, can legally enforce the terms of the Second Promissory Note, including the arbitration provision.  Iorio Decl. ¶¶ 20-27.  Therefore, the parties entered into a valid arbitration agreement with the Second Promissory Note.

The Court, therefore, turns to whether the arbitration provision covers Plaintiff's claims.  Navient argues that all of Plaintiff's claim are covered by the broad arbitration provision in the Second Promissory Note.  Def. Br. at 18-19.  Plaintiff counters that her claims only involve the first loan, and do not invoke any rights or obligations under the second loan agreement.  Plf. Opp. at 7.  The Court agrees with Plaintiff.

The FAA also instructs courts "to refer to principles of applicable state law when determining the . . . scope of an agreement to arbitrate."  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  Utah law provides that "the scope of an arbitration is defined by the parties' arbitration agreement."  *Evans v. Nielsen*, 347 P.3d 32, 39 (Utah Ct. App. 2015).  In interpreting a contract, courts begin with the ordinary and usual meaning of the words.  *HITORQ, LLC v. TCC Veterinary Servs., Inc.*, 502 P.3d 281, 286 (Utah 2021) (internal quotation omitted) ("So to understand this arbitration clause, we look to the ordinary and usual meanings of the words.").  In addition, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983));

---

[5] The arbitration provision also sets forth a procedure for an individual to reject the arbitration agreement by writing.  Iorio Decl., Ex. C at § Q.1.  Defendant has no record that Plaintiff rejected the arbitration provision.  *Id.* ¶ 33.  Moreover, Plaintiff does not indicate that she rejected the arbitration provision.

*see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (explaining that pursuant to the FAA, any doubts as to "the scope of arbitrable issues should be resolved in favor of arbitration"). Finally, if a matter involves several claims, "the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate." *Trippe Mfg. Co.*, 401 F.3d at 532.

Here, the First Promissory Note does not include an arbitration clause. The Second Promissory Note does, and the arbitration provision is broadly worded. *See* Iorio Decl., Ex. C at § Q.3. The provision provides that the parties can force arbitration to resolve any claims "that arises from or relates in any way to the Note." *Id.* In interpreting arbitration clauses with similar "arising out of or relating to language," Utah courts have concluded that "such broad clauses are capable of an expansive reach, and apply to disputes in which a significant relationship exists between the asserted claims and the contract in which the arbitration clause is contained." *Delta Stone Prods., Inc. v. Eurostone Mach. USA, Inc.*, No. 17-737, 2017 WL 5186369, at *3 (D. Utah Nov. 8, 2017). Given this broad language, this Court must determine if, despite only addressing the first loan in her pleading, Plaintiff's Complaint still involves "claims" as defined by the Second Promissory Note. Accordingly, the Court focuses on Plaintiff's allegation in the Complaint.

Plaintiff pleads that Navient services multiple of her loans and that she chose to focus on paying off her higher interest account, the first loan. Compl. ¶ 8. Plaintiff further alleges that "Defendant communicated to Plaintiff the exact payoff amount" for the account with the highest interest rate and advised her that she could pay off this loan. *Id.* ¶ 9. Based on Navient's representations, Plaintiff issued a check for the exact amount "with the intent to pay off account 502935****." *Id.* ¶ 10. Navient, however, "chose to apply the payment to different accounts with lower interest rates." *Id.* ¶ 11.

Thus, this case involves Plaintiff's attempt to pay off the first loan, whose promissory note did not have an arbitration clause. In other words, the case will turn on the terms of the First Promissory Note, what was said during Plaintiff's communications about paying off the first loan, and Plaintiff's actions thereafter (*i.e.*, whether Plaintiff correctly paid off the first loan). Although Navient applied part of Plaintiff's payment to the second loan, Navient's alleged mistake does not impact Plaintiff's affirmative claims, or the ultimately outcome of the case. In other words, there is not a significant relationship between Plaintiff's claims and the second loan and the corresponding Second Promissory Note.

Moreover, it appears that Navient will likely assert a defense that Plaintiff did not pay off the first loan correctly, meaning that Navient appropriately apportioned Plaintiff's payment between the two loans. If Navient is correct, there is no issue as to Navient's partial apportionment towards the second loan. If accurate, Plaintiff's claims will fail but the terms of the Second Promissory Note still will not be at issue.[6] To be clear, if there was an arbitration provision in the First Promissory Note and not the Second Promissory Note, the Court's finding would be the opposite. In that case, Plaintiff would clearly have to arbitrate her claims if the arbitration provision was valid and encompassed her claims. But because Plaintiff's affirmative claims only implicate the first loan, and thereby the First Promissory Note, they do not fall within the scope of the arbitration provision in the Second Promissory Note. Navient's motion to compel arbitration is denied.

---

[6] The Court recognizes that the second loan is relevant insofar as it had a lower interest rate than the first loan. The difference in the interest rate is the basis for Plaintiff's assertion that Defendant inappropriately applied the first-loan payout for financial gain. But the terms and conditions (save the interest rate) of the second loan and Second Promissory Note are not germane. Instead, this matter as pled will rise and fall on the terms of the first loan and the First Promissory Note and related dealings.

Navient also maintains that if the Court determines Plaintiff's claims are subject to arbitration, the Court should dismiss the matter or, alternatively, stay the case pending arbitration. Def. Br. at 24-25. Because the Court denies Navient's motion to compel arbitration, its request to dismiss or stay the case is denied.

Finally, Navient argues that this Court should dismiss Plaintiff's class action allegations because Plaintiff waived her right to participate in a class action through the arbitration provision in the Second Promissory Note. Def. Br. at 26-27. The arbitration provision provides that if a party elects to arbitrate, both parties waive the right "to participate in a class action in court or in arbitration." Iorio Decl., Ex. C at § Q.2. The arbitration provision also states that "any challenge to the validity and effect of the Class Action Waiver . . . must be decided by a court." *Id.* at § Q.3. Consequently, the Court addresses Defendant's class action waiver argument.

A class action waiver in an arbitration clause may be permissible. *See, e.g.*, *Lewis v. Eassit, Inc.*, No. 22-121, 2023 WL 2522812, at *3 (D. Utah Mar. 15, 2023) ("But collective or class action waivers are not substantively unconscionable under Utah law.") *Born v. Progrexion Teleservices, Inc.*, No. 20-107, 2020 WL 4674236, at *11 (D. Utah Aug. 11, 2020) (acknowledging that parties may agree to waive class claims through arbitration agreement); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (finding that state law finding class arbitration waivers in consumer contracts unconscionable was an obstacle to the FAA's objectives and therefore preempted). As discussed, the Second Promissory Note, and its arbitration provision, are not at issue. Accordingly, the class action waiver does not apply to Plaintiff's claims. Defendant's motion to strike the class action allegations is denied.

**IV.    CONCLUSION**

For the foregoing reasons, and for good cause shown,

IT IS on this 22nd day of March, 2023

**ORDERED** that Defendant's motion, D.E. 13, is **DENIED**.

_____
John Michael Vazquez, U.S.D.J.